UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

|  |  |  |
|---|---|---|
| ENCOMPASS INSURANCE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:08-cv-337 |
| | ) | |
| v. | ) | Honorable Joseph G. Scoville |
| | ) | |
| HAGERTY INSURANCE AGENCY, | ) | |
| INC., et al., | ) | **OPINION** |
| | ) | |
| Defendants. | ) | |
| | ) | |

This is a contract action brought pursuant to this court's diversity jurisdiction. 28 U.S.C. § 1332(a)(1). Plaintiff, Encompass Insurance, Inc. ("Encompass"), is an Illinois insurer and a subsidiary of Allstate Insurance Company. Defendants Hagerty Insurance Agency, Inc. and Hagerty Classic Marine Insurance Agency, Inc. (collectively "Hagerty") are Michigan insurance agencies. From 2001 through March 28, 2007, Hagerty acted as an insurance agent for Encompass. This action concerns Hagerty's entitlement to certain profit-sharing payments that Hagerty claims accrued under the parties' contracts during the year 2007.

Encompass initiated this action on April 10, 2008, seeking recovery of certain profit-sharing payments already paid to Hagerty; a declaration that no further payments are due under the agreements of the parties; a declaration that the parties' disputes over these payments are not subject to arbitration; and, alternatively, a declaration that Hagerty's method of selection of arbitrators was improper. On May 15, 2008, Hagerty filed its answer and counterclaim, seeking additional profit-

sharing payments and a declaration that the parties' dispute over these payments is subject to mandatory arbitration.  In round numbers, Hagerty seeks to retain approximately $5 million in profit-sharing payments already received from Encompass in 2007, as well as judgment for an additional $5.7 million in profit-sharing payments allegedly earned through the end of that year.  Encompass seeks to recover the $5 million in profit-sharing payments already made, as well as a declaration that no further payments are due.  The amount in controversy, therefore, exceeds $10.7 million.

At a case management conference conducted on July 29, 2008, the parties agreed to submit to the court two threshold issues for early resolution:  (1) whether plaintiff should be compelled to submit all claims to arbitration; and (2) if the matter is sent to arbitration, whether Hagerty's composition of the arbitration panel should be upheld.  (*See* Initial Case Management Order, docket # 35).  Pursuant to the agreement of the parties, and the court's implementing case management order, Hagerty has filed a motion to compel arbitration and for summary judgment on count 1 of the counterclaim and count 4 of the complaint.  (docket # 44).  Encompass has filed a motion for judgment on the pleadings with respect to the composition of the arbitration panel. (docket # 42).  The parties have consented to the dispositive jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c).  (*See* Order of Reference, docket # 32).  After both motions were fully briefed, the court conducted oral argument on December 10, 2008.  At the conclusion of the hearing, the court expressed its intention to grant Hagerty's motion to compel arbitration in part and to order certain issues to be arbitrated pursuant to the arbitration clause in the Agency Agreement Addendum.  The court further expressed its intention to deny plaintiff's motion for judgment on the pleadings with regard to the composition of the arbitration panel because of the existence of

unresolved, material issues of fact. This opinion represents the court's findings of fact and conclusions of law filed pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

## Findings of Fact

### A. The Agreements of the Parties

Plaintiff, Encompass Insurance, Inc., is a corporation organized and existing under the laws of the State of Illinois. Encompass is part of the Allstate group of insurance companies. Its principal place of business is in Northbrook, Illinois. Defendants are corporations organized and existing under the laws of the State of Michigan, with their principal places of business in Traverse City, Michigan. Defendants are insurance brokers who specialize in covering classic automobiles and boats throughout the country.[1]

The agency relationship between Encompass and Hagerty began on January 1, 2002. The parties' relationship was created and governed by a set of four interconnected documents:

- The Agency Agreement (Compl., Ex. A), dated January 1, 2002, was the foundational document. By virtue of the Agency Agreement, Encompass authorized Hagerty to act as its agent in soliciting, receiving, and transmitting proposals for insurance contracts, to bind, execute, and issue insurance agreements, and to perform other functions typically performed by an insurance agent. (¶ I). The agreement was subject to termination by either party upon ninety days' written notice. (¶ VI(E)). The Agency Agreement contained the following broad arbitration clause:

---

[1] For purposes of resolving the arbitration issues now before the court, the positions of the defendants are identical, and I will refer to defendants collectively as "Hagerty." With regard to the merits of the case, each defendant will be analyzed separately, when differing facts so dictate.

T.    In the event of any dispute relative to this Agreement or amendments thereto which cannot be settled amicably between the parties, the dispute shall be resolved by arbitration. The decision of the arbitrators shall be final and binding on all parties. The following process shall be followed in arbitration:

> Three (3) arbitrators shall be selected: one (1) of whom shall be selected by you, one (1) of whom shall be selected by us, and a third arbitrator shall be selected by the two arbitrators.

a.    The dispute shall be submitted to these three arbitrators and the decision in writing of any two of the three arbitrators shall be final and binding upon both parties to this Agreement. The arbitrators are relieved from all judicial formalities and may abstain from strict rules of law.

b.    Each party shall pay for the costs of their arbitrator and one half of the expenses of the third arbitrator.

c.    All arbitration shall take place in Chicago, Illinois unless otherwise agreed upon.

(¶ VI(T)).

•    The Agency Agreement Addendum (Compl. Ex. B) was also dated January 1, 2002, and was expressly "attached to and made a part of the Encompass Insurance Agency Agreement dated January 1, 2002" between the parties. By virtue of the Agency Agreement Addendum, Hagerty was appointed as exclusive agent for Encompass with respect to any covered business in certain geographic territories. The Agency Agreement Addendum deleted certain paragraphs of the Agency Agreement on a wholesale basis and set forth replacement provisions. Central to the dispute now before the court, the broad arbitration language set forth in Article VI(T) of the Agency Agreement was deleted in its entirety and replaced by the following language:

> As a condition precedent to any right of action hereunder, any and all factual disputes regarding causation or damages related to the Agreement, shall be resolved by a panel of three arbitrators and such arbitration shall be initiated

-4-

at the written request of either party.  An arbitrator shall be chosen by each party and the two so chosen shall choose the third.  If either party fails to appoint an arbitrator within thirty (30) days of being specifically requested to do so by the other party, the requesting party may choose both arbitrators who shall choose the third.  In the event the two arbitrators are unable to agree upon the third arbitrator within thirty (30) days of their appointment, the third arbitrator shall be selected from a list of six individuals, three named by each arbitrator, by a judge of the Federal District Court having jurisdiction over the geographical area in which the arbitration is to take place, or if the Federal Court declines to act, the State Court having general jurisdiction in such area.  All arbitrators shall be active or retired executive officers of insurance companies or insurance agencies other than you or us, and not have a personal or financial interest in the parties or the outcome of the arbitration.

The party requesting arbitration shall submit its case within thirty (30) days of the selection of the third arbitrator and the respondent shall submit its case thirty (30) days thereafter, or as otherwise extended by the arbitration panel.  The panel shall make its decision with regard to the customer [sic] and practice of the insurance business, but is prohibited from awarding punitive damages.  The panel is relieved of all judicial formalities and may abstain from following the strict rules of evidence and procedure.

Each party shall bear the expenses of the arbitrator it selected and shall share equally with the other in the expenses of the third arbitrator and the arbitration.  The panel shall issue its decision as promptly as possible following the completion of a hearing, if there is one.  The majority decision of the arbitrators shall be final and binding upon all parties to the proceeding.  Judgment may be entered upon the award of the panel in any court having jurisdiction thereof.

The arbitration shall take place in Traverse City, Michigan, unless the panel deems it in the best interest of the arbitration to conduct all or part of the arbitration at another location or unless the Parties mutually agree to another location.

(Agency Agreement Addendum ¶ 8).  The addendum expressly provided that the agreement and all of the rights of the parties under the agreement shall be governed by, construed under, and enforced in accordance with the substantive law of the State of Michigan.  (¶ 8).

- The Charter Agency Addendum (Counterclaim Ex. C(1)) recites that it is effective January 1, 2001, but the parties agree that it was executed contemporaneously with the Agency Agreement and Agency Agreement Addendum.  The Charter Agency Addendum expressly "amends and supplements the Encompass Insurance Agency Agreement" and provides that it governs in case of a conflict between the two.  The Charter Agency Addendum modifies the basic Agency Agreement in a number of important ways.  Relevant to the present dispute, the Charter Agency Addendum provided that the Agency Agreement may be terminated by either party upon written notice directed to the other party "at least one year prior to the termination date."  The Charter Agency Addendum also contemplated that Encompass would offer a special "charter agency bonus program" to Hagerty each year.

- The Profit-Sharing Agreement (Counterclaim Ex. 1) was dated February 15, 2002, but was "effective beginning with the 2002 Program Year."  (p. 3).  The Profit-Sharing Agreement referred to the separate Encompass Insurance Agency Agreement and stated that, in addition to the commissions otherwise provided for in the Agency Agreement, Encompass would allow Hagerty as "additional compensation" profit-sharing payments according to calculations set forth therein.  With regard to termination, the Profit-Sharing Agreement provided that with regard to agents (such as Hagerty) who hold a Charter Agency Addendum, the agreement may be terminated by either party by giving written notice of intention to terminate directed to the other party at least 180 days prior to the termination date.  It also provided that the cancellation or termination of the underlying Agency Agreement would "automatically cancel" the Profit-Sharing Agreement.  "No profit-sharing payment

whatsoever shall be paid to you for the Program Year in which your Agency Agreement is terminated." (¶ III(E)).

Thereafter, the parties amended the Charter Agency Addendum and the Profit-Sharing Agreement, but not in a coordinated fashion. A new Charter Agency Addendum (Counterclaim Ex. C-2) was adopted by the parties effective January 1, 2005. This agreement is hereafter referred to as the "2005 Charter Agency Addendum." The 2005 Charter Agency Addendum purported to amend and supplement the original Encompass Insurance Agency Agreement, effective January 1, 2002. The 2005 Charter Agency Addendum contemplated a "Charter Agency Bonus Program," stating that Encompass would offer a special Charter Agency Bonus Program to Hagerty on an annual basis, subject to change for each year of the program. (*Id.* at 2). Like its predecessor, this document provided that the underlying Agency Agreement may be terminated by either party upon one year's written notice. (*Id.* at 1).

The parties entered into a new Profit-Sharing Agreement effective at the beginning of the 2006 calendar year. (Counterclaim, Ex. E-2). Like its predecessor, this Profit-Sharing Agreement specifically referred in its preamble to the "separate Encompass Insurance Agency Agreement," and stated that the profit-sharing arrangement was in addition to the commissions otherwise provided for in the underlying Agency Agreement. (p. 1). (This Profit-Sharing Agreement is hereafter referred to as the "2006 Profit-Sharing Agreement.") The 2006 Profit-Sharing Agreement superseded and canceled any previous profit-sharing or other bonus agreement (¶ III(D)). The 2006 Profit-Sharing Agreement was expressly integrated with the preexisting agency agreements. It provided that, with regard to agencies (such as Hagerty) who hold a Charter Agency Addendum, "this Agreement shall constitute the special Charter Agency Bonus Program referenced

-7-

in such Addendum." (*Id.*).  The 2006 Profit-Sharing Agreement provided that either party may terminate the agreement by written notice at least ninety days prior to the termination date.  The ninety-day notice would "commence upon the date of mailing of such notice." (¶ III(E)).  It also stated that any cancellation or termination of the Agency Agreement would automatically cancel the Profit-Sharing Agreement without further notice and that "[n]o Profit Sharing Payment whatsoever shall be paid to [the Agent] for the calendar year in which your Agency Agreement is terminated." (*Id.*).

The parties again amended the Charter Agency Addendum by document executed February 23, 2007, effective January 1, 2007.  (Compl. Ex. D).  This agreement is referred to hereafter as the "2007 Charter Agency Addendum."  The 2007 Charter Agency Addendum amended and supplemented the Encompass Insurance Agency Agreements dated January 1, 2002.  This agreement contemplated that Encompass would offer to Hagerty, as a charter agency, "bonuses, awards, prizes, and/or other remuneration based on performance as we may prescribe in our sole discretion." ("Charter Benefits")."  The 2007 Charter Agency Addendum provided that such charter benefits would be communicated to agents in writing prior to January 1 of each calendar year and that Encompass could change or eliminate benefits by written notice prior to January 1 of the calendar year in which the change or elimination would be effective.  Consistent with the previous Charter Agency Addenda, the 2007 Charter Agency Addendum expressly replaced the ninety-day termination provision of the underlying Agency Agreement to a one-year termination provision.  Furthermore, the 2007 Charter Agency Addendum allowed Encompass to terminate the addendum itself upon one year written notice, providing that the agency "shall not receive any Charter Benefits for the calendar year in which your Charter Agency Addendum is terminated."

B.      **The Dispute Before the Court**

The present dispute involves the 2007 calendar year.  For that year, the relationship of the parties was governed by the following documents:  the Encompass Insurance Agency Agreement (effective January 1, 2002); the Agency Agreement Addendum (effective January 1, 2002); the 2007 Charter Agency Addendum; and the 2006 Profit-Sharing Agreement.

In brief summary, the facts giving rise to the present dispute are as follows.  By letter dated March 28, 2007, Hagerty gave written notice to Encompass that Hagerty was terminating the Agency Agreements "pursuant to the terms thereof."  (Counterclaim Ex. F).  Hagerty claims that it continued to act as agent under the agreements, writing over $120 million in business after giving notice of termination, on the assumption that the effective date of termination was March 28, 2008.  On May 14, 2007, however, Encompass sent a letter to Hagerty terminating the 2006 Profit-Sharing Agreement.  (Counterclaim Ex. G).  The letter stated that Hagerty's right to profit-sharing payments would cease ninety days later, on August 18, 2007.[2]  Encompass made profit-sharing payments until approximately July 1, 2007.  Its last payment was for amounts earned through June 30, 2007.

On October 18, 2007, Timothy Thompkins, general counsel for Hagerty, sent Encompass a letter setting forth its position concerning $5.7 million in payments allegedly due under the 2006 Profit-Sharing Agreement for 2007.  (Compl. Ex. I).  The letter stated Hagerty's intention to seek binding arbitration under the contract if the parties did not resolve their disputes.  On February 13, 2008, Mr. Thompkins again wrote to Encompass setting forth an itemization of its

---

[2] Encompass addressed its letter of May 14, 2007, only to defendant Hagerty Insurance Agency, Inc. and not to Hagerty Classic Marine Insurance Agency, Inc.  The parties disagree on the question whether the letter was sufficient to terminate any rights of the latter corporation.  That dispute is not germane to the issues now before the court.

claims for $10.8 million in profit-sharing payments for the calendar year 2007, of which only $5.04 million had been received.  (Compl. Ex. J).  The letter demanded payment of $5.77 million.  The letter contained the following paragraph:

> In addition, this letter constitutes Hagerty's demand, pursuant to the Agency Agreement Addenda, for arbitration of this dispute.  Hagerty has chosen Andy Walsh as one of the arbitrators of this dispute.  You are hereby specifically requested to appoint an arbitrator.

(Compl. Ex. J, p. 2).  On February 25, 2008, Greg Rohlfing, counsel for Encompass's parent company, responded to the letter, offering to discuss Hagerty's claim "and your suggestion that it should be arbitrated."  Mr. Rohlfing's e-mail indicated that he did not understand the basis for the request to arbitrate and said that the scope of the arbitration provision "would not seem to cover a dispute of this nature."  (Compl. Ex. K).  The time for appointment of an arbitrator by Encompass elapsed without action.  On March 21, 2008, Mr. Thompkins notified Mr. Rohlfing that Hagerty had elected to exercise its authority under the arbitration clause of the Agency Agreement Addendum to appoint John Von Lehman as the second arbitrator and that the two arbitrators (Walsh and Von Lehman) would choose the third arbitrator.  (Compl. Ex. L).

Encompass initiated this civil action by complaint dated April 10, 2008.  Count 1 of the complaint seeks a declaratory judgment that Encompass properly terminated the Profit-Sharing Agreement effective August 18, 2007, and that no further profit-sharing payments are due thereunder.  Count 2 is for breach of contract and seeks to recover $5.04 million paid by Encompass to Hagerty in profit-sharing for the first half of 2007.  Count 3 is for unjust enrichment, again seeking return of the profit-sharing payments made for the first half of the year.  Count 4 seeks a declaratory judgment that none of the disputes of the parties is arbitrable, because the 2006 Profit-Sharing

Agreement does not contain an arbitration clause and because the dispute of the parties falls outside the scope of issues subject to arbitration.  Count 5 seeks a declaration that Hagerty's purported selection of a second arbitrator is null and void.  Count 6 seeks injunctive relief, preventing Hagerty from pursuing any further arbitration proceeding.

Defendants filed their answer and counterclaim on May 15, 2008.  Count 1 of the counterclaim requested declaration that Hagerty's claims for profit-sharing payments earned in 2007 are subject to mandatory arbitration under the Agency Agreements.  Count 2 asserts breach of contract arising from Encompass's failure to make all profit-sharing payments owing to Hagerty Insurance Agency through August 18, 2007, and to Hagerty Classic Marine Insurance Agency through December 31, 2007.  Count 3 asserts a claim for unjust enrichment, and count 4 seeks recovery of the same payments on a theory of promissory estoppel.  Count 5 purports to allege a claim for "breach of good faith."

The issues now before the court are:

(1)  Does the arbitration clause in the Agency Agreement Addendum cover disputes arising under the 2006 Profit-Sharing Agreement?

(2)  If the arbitration clause applies, what is its scope, and which of the parties' disputes are arbitrable?

(3)  Is Encompass entitled to relief from Hagerty's exercise of its contractual right under the Agency Agreement Addendum to appoint the second arbitrator?

## Discussion

**I.      Arbitrability of Disputes Arising Under the Profit-Sharing Agreement**

Count IV of the complaint and count I of the counterclaim frame the question whether the parties' disputes under the 2006 Profit-Sharing Agreement are subject to mandatory arbitration. Relying on the arbitration clause in the Agency Agreement Addendum, Hagerty asserts that all disputes are subject to arbitration. Encompass disagrees, arguing that the arbitration clause in the Agency Agreement Addendum does not cover disputes under the Profit-Sharing Agreement, which itself contains no arbitration clause. Furthermore, Encompass argues that the arbitration clause upon which Hagerty relies by its terms covers only "factual disputes regarding causation or damages related to the Agreement," and no other issues. For the reasons set forth below, the court concludes that the arbitration clause in the Agency Addendum Agreement covers disputes arising under the 2006 Profit-Sharing Agreement, but that the parties' agreement to arbitrate was narrow and was limited, by the plain terms of the arbitration clause, to questions of fact regarding causation and damages.

### A.

The parties agree that the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16, governs the arbitration clause in the Agency Agreement Addendum. Section 2 of the FAA provides that any written provision to settle by arbitration a contractual dispute involving "a contract evidencing a transaction involving commerce" is valid, irrevocable and enforceable. 9 U.S.C. § 2. The Supreme Court has held that this language is broad and that the reach of the FAA is as expansive as that of the Commerce Clause. *See Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56-57 (2003); *Allied-Bruce*

*Terminix Cos. v. Dobson*, 513 U.S. 265, 273-75 (1995). A contract between an Illinois insurer and a Michigan agency, governing the sale and administration of insurance agreements for customers on a multi-state basis, clearly evidences a transaction "involving commerce" within the meaning of the FAA. *See Edstrom Indus., Inc. v. Companion Life Ins. Co.*, 516 F.3d 546, 549 (7th Cir. 2008); *Tittle v. Enron Corp.*, 463 F.3d 410, 418 n.7 (5th Cir. 2006); *Brennan v. Aetna Life Ins. Annuity Co.*, No. Civ. A. 300cv2205BC, 2001 WL 167954 (N.D. Tex. Jan. 19, 2001) (FAA governs arbitration clause in sales representative agreement with insurance company).

Hagerty invokes section 4 of the FAA, 9 U.S.C. § 4, which requires a court to direct the parties to proceed to arbitration in accordance with the terms of an arbitration agreement, upon a finding that the making of the agreement for arbitration is not in issue. When faced with such an application, the court must address two separate questions. First, the court must determine whether a valid agreement to arbitrate exists between the parties. Second, the court must answer the question whether the "specific dispute" falls within the ambit of the arbitration agreement. *JPD, Inc. v. Chronimed Holdings, Inc.*, 539 F.3d 388, 390-91 (6th Cir. 2008); *accord Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003). The FAA creates a body of federal substantive law governing arbitration and preempts state law specific to arbitration of contracts involving interstate commerce. *See Southland Corp. v. Reading*, 465 U.S. 1, 11 (1984); *accord Preston v. Ferrer*, 128 S. Ct. 978, 979 (2008). In deciding issues not specific to arbitration law, however, the court should apply "ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 452 (6th Cir. 2005). In applying general state-law principles of contract formation and interpretation to an arbitration agreement within the scope of the FAA, due regard must nevertheless be given to

the strong federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause must be resolved in favor of arbitration. *Volt Info. Sciences, Inc. v. Leland Stanford, Jr. Univ.*, 489 U.S. 468, 475-76 (1989). In the present case, the parties expressly adopted Michigan law to govern all questions of contract construction. (Agency Agreement Addendum ¶ 8). Consequently, this court must be guided by Michigan principles of contract formation and interpretation, with due regard for the federal policy in favor of arbitration.

## B.

As noted above, the first issue before the court is whether a valid agreement to arbitrate exists between the parties. In seeking to compel arbitration, Hagerty relies on Article VI(T) of the Agency Agreement Addendum, which contains the following language:

> As a condition precedent to any right of action hereunder, any and all factual disputes regarding causation or damages related to the Agreement, shall be resolved by a panel of three arbitrators and such arbitration shall be initiated at the written request of either party.

(Agency Agreement Addendum dated 1/1/02, ¶ VI(T)). Encompass resists arbitration of the parties' dispute under the 2006 Profit-Sharing Agreement, arguing that the Profit-Sharing Agreement is an independent, "freestanding," agreement (Compl. ¶ 58) and that the arbitration clause contained in a different contract simply does not cover disputes arising under the Profit-Sharing Agreement.

Arbitration is a matter of contract between the parties. *See Bratt Enters. v. Noble Int'l, Ltd.*, 338 F.3d 609, 612 (6th Cir. 2003). Embrace can be compelled to arbitrate disputes under the Profit-Sharing Agreement only if it agreed in writing to do so. The question is whether the arbitration clause in the Agency Agreement Addendum expresses an intent to arbitrate disputes arising under the related contracts as well. In adjudicating disputes in similar circumstances, the

-14-

Sixth Circuit teaches that "an arbitration clause in a master or 'umbrella' agreement that creates an ongoing relationship encompasses a dispute over the terms of a later contract that was entered into as a part of the relationship, even if the later contract itself lacks an arbitration clause." *Panepucci v. Honigman, Miller, Schwartz & Cohn, LLP*, 281 F. App'x 482, 488 (6th Cir. 2008); *accord Nestle Waters No. Am., Inc. v. Bollman*, 505 F.3d 498, 505 (6th Cir. 2007).   In the present case, the parties executed a tightly integrated set of agreements at the outset of their relationship.  As set forth in the Findings of Fact, the fundamental document is the Agency Agreement dated January 1, 2002.  The Agency Agreement Addendum, which bore the same date, was expressly attached to and made a part of the underlying Agency Agreement.  The Agency Agreement Addendum modified many important provisions of the underlying Agency Agreement, replacing some of them wholesale.  Included among the clauses that were completely rewritten was the arbitration clause, contained in paragraph VI(T) of the Agency Agreement Addendum.  The Charter Agency Addendum, also executed contemporaneously, expressly amended and supplemented the underlying Agency Agreement and contemplated a special bonus program for the agent.  The original Profit-Sharing Agreement, like the other addenda, referred expressly to the underlying, contemporaneous Agency Agreement and was expressly intended to provide the agent with additional compensation above that provided in the Agency Agreement.  It is beyond question that the original four agreements were a unified and integral whole, and must be interpreted as if they were a single agreement. *See Sawyer v. Arum*, 690 F.2d 590, 592 (6th Cir. 1982).  With the passage of time, the Charter Agency Addendum and the Profit-Sharing Agreement were amended, but not in any way that would undermine the essential unity of the four agreements.  Any court faced with these contracts would be required to read them

together and to conclude that the parties agreed to arbitrate all disputes arising under any of the agreements.

Encompass seeks to distinguish *Panepucci* and *Nestle Waters* on their facts, arguing that the Sixth Circuit decision in *Alticor, Inc. v. National Union Fire Insurance Co.*, 411 F.3d 669 (6th Cir. 2005), is more apposite.   This argument is not persuasive.   First, Encompass asserts that the holdings of *Panepucci* and *Nestle Waters* rested principally on the breadth of the arbitration clauses involved in those cases.   Because the arbitration clause in the present case is narrower, Encompass argues that *Panepucci* and *Nestle Waters* do not apply.   These cases, however, are not so easily distinguished.   The breadth of the arbitration clauses was certainly a factor in each case, but not the principal one.   In *Nestle Waters*, the court principally rested its analysis on the inter-relationship of the agreements, noting that the proper interpretation of the "Deed" (the agreement that lacked an arbitration clause) could not be determined without reference to the "PSA" (the agreement that contained an arbitration clause).   505 F.3d at 505.   The court further relied on the fact that the ongoing relationship between the parties was dictated in the first instance by the PSA.   "In the course of interpreting the terms of the Deed, it is almost certain that reference will be made to the other documents, as well as the PSA, since it was the PSA that created the relationship between Nestle and the Bollmans in the first place."   *Id.*   The court was also impressed by the fact that the PSA was the initial agreement, to which all others were related.   "While the sequence of contracts may not be dispositive, the fact that the arbitration clause is part of the umbrella agreement governing the parties' overall relationship is sufficient to distinguish our facts from those cases in which opportunistic parties sought to apply arbitration clauses from later agreements to conduct arising out of earlier agreements."   *Id.* at 506.   *Panepucci* (a much less important decision because

-16-

it was unpublished) likewise held that an arbitration clause in a law firm partnership agreement applied to claims arising under the later "Attorney Manual."  Again, the crucial feature was that the agreement to arbitrate appeared in the document creating the relationship.  The court's analysis in *Nestle Waters* and *Panepucci* applies with equal force to the present case, in which the arbitration clause is contained in the initial, foundational agreement which created the agency relationship from which all other agreements arise.

By contrast, *Alticor* involved an arbitration clause contained in a premium payment agreement, executed after the underlying insurance policy.  The policy contained no arbitration clause.  The dispute of the parties arose under the policy itself, as the parties disagreed concerning the number of occurrences under policy language.  The court expressly noted that the insurance policy, not the premium payment agreement, defined the parties' substantive rights and duties.  411 F.3d at 671.  On this basis, the court found that the arbitration clause covered only disputes arising or relating to the premium payment agreement and not to the preexisting, underlying policy.  *Alticor* therefore has little application to the present case.  Indeed, the *Nestle Waters* court expressly distinguished *Alticor* noting that "an arbitration clause in a later agreement could not apply to a dispute over substantive rights and obligations stemming from an earlier agreement."  505 F.3d at 504.  Thus, in *Alticor*, the arbitration agreement appeared in a later, ancillary document, rather than in the initial, foundational agreement.

Arbitration was obviously a subject of the parties' negotiations at the outset of their relationship.  The original Agency Agreement contained a broad arbitration clause.  The Agency Agreement Addendum, executed contemporaneously, also contained an arbitration clause, but in significantly modified form.  The foundational Agency Agreement, as amended by the Agency

-17-

Agreement Addendum, was the basis for the other two agreements entered into the same year, the Charter Agency Addendum and Profit-Sharing Agreement. Although the Profit-Sharing Agreement, like the Charter Agency Addendum, was later amended, it is impossible to view the Profit-Sharing Agreement as a "freestanding" contract, as Encompass now argues. Rather, it expressly referred to the underlying Agency Agreement and was, on its face, designed to supplement it. This case clearly falls within the rule of *Nestle Waters* and *Panepucci* and is unlike the situation faced by the Court of Appeals in *Alticor*.

In summary, the court concludes that the parties intended the arbitration clause to apply to all their agreements, including the Profit-Sharing Agreement. Claims arising under any of the agreements, including the Profit-Sharing Agreement, are subject to arbitration, if they fall within the scope of the arbitration clause.

## C.

Hagerty asserts that, once a court finds an arbitration clause to exist, the court must immediately order the matter to arbitration on all issues, and leave to the arbitrators the question of which disputes fall within the scope of the arbitration clause. This is flatly incorrect. If the parties have not expressly agreed to allow the arbitrators to determine the question of arbitrability, the issue is one for the court. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). The court must determine "whether the parties objectively revealed an intent to submit the arbitrability issue to arbitration." *Id.* at 944. Courts should not assume that the parties agreed to arbitrate the question of arbitrability unless there is "clear and unmistakable" evidence that they did so. *Id.* "[A]bsent 'clear and unmistakable' evidence that contracting parties intended an arbitrator (rather

than a court) to resolve questions of arbitrability, courts 'should *independently* decide whether an arbitration panel has jurisdiction over the merits of any particular dispute.'" *Solvay Pharm. Inc. v. Duramed Pharm., Inc.*, 442 F.3d 471, 477 (6th Cir. 2006) (quoting *First Options*, 514 U.S. 941, 945). "The default answer" is that questions of arbitrability are the province of courts, not arbitrators. 442 F.3d at 477-78. In the present case, not one word in any of the agreements suggests that the parties agreed to have arbitrators decide the scope of the arbitration clause. As in the usual case, therefore, the scope of the arbitration clause is an issue for the court. *Solvay Pharm.*, 442 F.3d at 477. In other words, the court (and not the arbitrators) must decide that the "specific dispute falls within the substantive scope of that agreement." *Javitch*, 315 F.3d at 624.

The Sixth Circuit has repeatedly emphasized that, despite the strong presumption in favor of arbitration, "arbitration is a matter of contract between the parties, and one cannot be required to submit to arbitration a dispute which it has not agreed to submit to arbitration." *United Steelworkers, Local No. 1617 v. Gen. Fireproofing Co.*, 464 F.2d 726, 729 (6th Cir. 1972); *accord Watson, Wyatt & Co. v. SBC Holdings, Inc.*, 513 F.3d 646, 649 (6th Cir. 2008); *NCR Corp. v. Korala Assoc., Ltd.*, 512 F.3d 807, 813 (6th Cir. 2008). Therefore, the court must be guided by the express provisions of the arbitration clause to determine which disputes the parties agreed to arbitrate. "While ambiguities in the language of the agreement should be resolved in favor of arbitration, we do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) (citation omitted).

The arbitration clause contained in paragraph VI(T) of the Agency Agreement Addendum is exceedingly limited. By its clear terms, it covers only "any and all factual disputes

regarding causation or damages related to the Agreement." The clause is therefore limited in two important ways. First, it covers only "factual disputes" and not questions of law. Second, it covers only disputes "regarding causation or damages related to the Agreement." In any claim for breach of contract, the issues include the existence of a contract, breach of the contract, causation and damages. *See, e.g., In re Brown*, 342 F.3d 620, 628 (6th Cir. 2003) (applying Michigan law). For reasons best known to them, the parties decided that only issues of fact regarding causation or damages arising under their agreement would be arbitrable.

The arbitration clause in the Agency Agreement itself (Compl. Ex. A) contained a typically broad arbitration clause. It provided that "in the event of any dispute relative to this Agreement or amendments thereto" the dispute would be subject to arbitration. (¶ VI(T)). The Agency Agreement Addendum, signed the same day, made numerous and significant changes to the Agency Agreement and replaced the arbitration clause in its entirety.[3] One of the many differences between the original clause and the replacement clause was a marked restriction on the scope of arbitrable issues. The words that the parties chose to express their limited commitment to arbitration stand in stark contrast to the broad arbitration clause that they elected to supersede.

Hagerty argues strenuously that the court can draw no inference from the patent difference between the broad arbitration clause in the Agency Agreement and the markedly more limited arbitration clause in the Agency Agreement Addendum. Hagerty asserts that the court must first allow discovery and delve into prior negotiations and the parties' subjective intents. According

---

[3] It is a fair deduction that at least some of the changes were made to accommodate Hagerty. For example, the original arbitration clause provided for arbitration in Chicago, Illinois, Encompass's place of business. The new arbitration clause provided for arbitration in Traverse City, Michigan, Hagerty's principal place of business.

to Hagerty, until such factual investigation is complete, the court can draw no inference from the stark difference in the wording of the two arbitration clauses. This is simply incorrect. Under Michigan law, where the language of the contract is clear and unambiguous, construction of the contract frames a question of law. *Meagher v. Wayne State Univ.*, 565 N.W.2d 401, 415 (Mich. Ct. App. 1997). A contract is not ambiguous if it fairly admits of but one interpretation. *Id.* If no reasonable person could dispute the meaning of ordinary and plain contract language, the court must accept and enforce the language as written. *Rory v. Continental Ins. Co.*, 703 N.W.2d 23, 30 (Mich. 2005). In the absence of ambiguity, one party's subjective understanding of what was intended by contract language is irrelevant to determining what the language actually says. *See Zurich Ins. Co. v. CCR & Co.*, 576 N.W.2d 392, 395 (Mich. Ct. App. 1997). The language of both the original arbitration clause and the arbitration clause in the Agency Agreement Addendum is clear, unambiguous, and admits of only one interpretation. Discovery into parol evidence, subjective understandings, and oral representations is irrelevant and unnecessary. The bare fact remains that the parties began with a broad arbitration clause but immediately opted for an exceedingly narrow one. If words are to have any meaning, the court must reject Hagerty's invitation to ignore the parties' adoption of an unusually narrow arbitration clause in the Agency Agreement Addendum to supersede the broad arbitration clause contained in the foundational Agency Agreement.

Even ignoring the dramatic change in the language of the arbitration clause, as set forth in the Agency Agreement Addendum, the court must conclude that the plain language of the clause, on its face, covers only a narrow range of disputes. First, the arbitration clause does not cover "all disputes" arising under the Agreement but is limited to "all factual disputes." *J.P. Greathouse Steel Erectors, Inc. v. Blount Bros. Construction Co.*, 374 F.2d 324 (D.C. Cir. 1967),

is instructive.  The arbitration clause in a subcontract in that case provided that "if any question of fact shall arise under this contract, . . . either party hereto may demand an arbitration."  When the subcontractor sued in federal court for breach of contract, the general contractor moved to compel arbitration of the dispute.  The district court granted the motion, and compelled the parties to arbitrate "all matters in dispute which are subject to arbitration."  374 F.2d at 325.  After the arbitrators entered their award, the subcontractor moved to vacate the award.  The D.C. Circuit noted that the arbitration clause covered "only questions of fact."  *Id.*  The court also noted that the parties did not adopt the broad arbitration clause recommended by the American Arbitration Association, which would cover "any controversy or claim" arising under the contract or the breach thereof.  The court noted, "It seems clear that the parties did not intend, by the narrow language they used instead of the broad language recommended by the Association, to agree to arbitrate claims for breach of contract that involve questions of law as well as fact."  *Id.*  On this basis, the court found that the arbitrators had exceeded their authority by deciding questions of law involving the contract.  Likewise, in the present case, the parties opted to submit to arbitration only "factual disputes."  Their choice of language to express their agreement admits only one interpretation, namely, that questions of law would be determined by the court.

In addition to being limited to factual disputes, the scope of the arbitration clause was further limited to "disputes regarding causation or damages related to the Agreement."  Again, it would have been a simple thing for the parties to have expressed their intention to resolve "all disputes related to the agreement" by arbitration, if that had been their intention.  Instead, they were careful to limit the scope of their agreement to issues regarding causation or damages, leaving for the court's decision questions of contract interpretation not related to damages or causation.

The strong federal policy in favor of arbitration requires that the court resolve "any doubts" concerning the scope of an arbitration clause in favor of arbitration.  *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).  This principle, applicable where the language chosen by the parties is ambiguous or leaves room for doubt, has no application in the present case.  The parties drafted a narrow arbitration clause, applicable only to factual disputes regarding causation or damages related to the Agreement.  Lawyers have been drafting arbitration clauses under the FAA since 1925, and the method of expressing a broad arbitration agreement is both simple and well known.  The plainly limited language chosen by the parties admits of only one reasonable interpretation.  In these circumstances, the court would err in submitting all claims to arbitration, despite the limited scope of the arbitration clause.  "[W]hen an arbitration clause by its terms extends to only a specific type of dispute, then a court cannot require arbitration on claims that are not included."  *Simon v. Pfizer, Inc.*, 398 F.3d 765, 775 (6th Cir. 2005).

Because this case is still in its initial stages, it is not possible to identify each and every legal and factual dispute that may arise between the parties.  On the basis of those claims now clearly identified by each party in the record, the court can provide a non-exhaustive listing of claims that fall outside the limited scope of the arbitration agreement.  Such non-arbitrable claims include the following:

• the obligation of Encompass under the agreements to make profit-sharing payments to Hagerty for the period from January 1, 2007, through December 31, 2007;

• whether profit-sharing payments under the 2007 Profit-Sharing Agreement should be deemed "charter benefits" and therefore not subject to change except by written notice prior to January 1 of the calendar year in which the change is effective;

- the right of Encompass to recover profit-sharing payments made to Hagerty for the period before June 30, 2007;

- the legal effect, if any, of Encompass's failure to direct a termination letter to Hagerty Classic Marine Insurance Agency under the 2006 Profit-Sharing Agreement; and

- the effect of paragraph III(E) of the 2006 Profit-Sharing Agreement, which provides that no profit-sharing payment whatsoever will be paid to the agent for the calendar year in which the Agency Agreement is terminated.

This non-exhaustive list of issues is designed only to illustrate that many basic contract interpretation issues, upon which the parties now disagree markedly, fall outside the scope of the arbitration clause because they relate to issues other than causation or damages. By contrast, all questions concerning the existence, calculation, and amount of damages, including application of the rather complicated formula set forth in the 2006 Profit-Sharing Agreement, would fall within the scope of arbitration, as would Hagerty's claim for approximately $730,000.00 in "shortfall amounts" allegedly owed for the first and second quarters of 2007, arising from alleged underestimation of profit-sharing payments under the formula.

In summary, the court concludes that all issues of fact relating to causation or damages are subject to mandatory arbitration, but all other questions in this case are outside the scope of the arbitration clause. A partial judgment will therefore be entered on count 4 of the complaint and count 1 of the counterclaim, compelling plaintiff to submit those claims to arbitration.[4]

---

[4] Under the provisions of the FAA, the court would be required at this point in the case to compel arbitration of these arbitrable issues and to stay all proceedings on claims for breach of contract in this court. 9 U.S.C. §§ 3, 4. The parties have filed a stipulation, however, agreeing to

D.

In count 5 of its complaint, Encompass seeks a declaration that Hagerty's selection of a second arbitrator is "null and void." Encompass has now moved under Fed. R. Civ. P. 12(c) for judgment on the pleadings on count 5, asserting that the facts contained in the pleadings establish Encompass's right to relief on count 5 as a matter of law.

Rule 12(c) of the Federal Rules of Civil Procedure states, "After the pleadings are closed -- but early enough not to delay trial -- a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). A Rule 12(c) motion for judgment on the pleadings is reviewed under the same standards as a Rule 12(b)(6) motion to dismiss. *See Jelovsek v. Bredesen*, 545 F.3d 431, 434 (6th Cir. 2008). Review is generally restricted to the pleadings, but matters of public record, orders, items appearing in the record of the case, and exhibits attached to the pleadings may be taken into account without converting a Rule 12(c) motion into a motion for summary judgment. *See Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008); *accord Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008). The court must construe the pleadings in the light most favorable to the non-moving party, accept the well-pled factual allegations as true, and determine whether the moving party is entitled to judgment as a matter of law. *Barany-Snyder v. Weiner*, 539 F.3d at 332; *see Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 550 (6th Cir. 2008). The court need not accept legal conclusions or unwarranted factual inferences as true. *See Commercial Money Center, Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007). When a plaintiff seeks a judgment on the pleadings, the motion can only be granted where no genuine issue of material fact exists and the

---

the court's resolution of certain liability issues before the case is sent to arbitration on factual issues relating to causation or damages. (Stipulation, docket # 55).

plaintiff is entitled to judgment in its favor as a matter of law. *See Tucker v. Middleburg-Legacy Place*, 539 F.3d at 549; *JPMorgan Chase Bank N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007); *see also* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, 5C FEDERAL PRACTICE & PROCEDURE § 1368 at 251 (3d ed. 2004) ("[T]he plaintiff may not secure a judgment on the pleadings when the answer raises issues of fact that, if proved, would defeat recovery.").

The Statement of Facts of this opinion sets forth those facts relating to count 5 that are undisputed. In brief summary, the pleadings show the following undisputed sequence of events relevant to plaintiff's motion:

(1) On October 18, 2007, Hagerty sent Encompass a letter setting forth its position concerning $5.7 million in payments allegedly due under the 2006 Profit-Sharing Agreement for the year 2007. The letter stated Hagerty's intention to seek binding arbitration under the contract if the parties did not resolve their disputes. (Compl. & Ans. ¶ 26; Plf. Ex. I).

(2) On February 13, 2008, Hagerty again wrote to Encompass setting forth an itemization of its claims and clearly demanding arbitration. Hagerty informed Encompass that it had chosen Andy Walsh as one of the arbitrators and "specifically requested" Encompass to appoint an arbitrator. (Compl. & Ans. ¶ 27; Plf. Ex. J).

(3) On February 25, 2008, counsel for Encompass responded to the letter by e-mail, acknowledging Hagerty's "suggestion" that the dispute should be arbitrated. Encompass's e-mail indicated that it did not understand the basis for the request to arbitrate and asserted that the arbitration clause did not cover a dispute of

this nature.  Hagerty did not specifically respond to this e-mail.  (Compl. & Ans. ¶ 28; Plf. Ex. K).

       (4)     The time for appointment of an arbitrator by Encompass elapsed without action.

       (5)     On March 21, 2008, Hagerty notified Encompass that Hagerty elected to exercise its authority under the arbitration clause to appoint John Von Lehman as the second arbitrator, and that arbitrators Walsh and Von Lehman would choose the third arbitrator.  (Compl. & Ans ¶ 29; Plf. Ex. L).

       Hagerty's election of a second arbitrator was made pursuant to paragraph VI(T) of the Agency Agreement Addendum.  After setting forth the basic, limited agreement to arbitrate, the arbitration clause established the procedure under which arbitration would be governed.  It included this sentence.  "If either party fails to appoint an arbitrator within thirty (30) days of being specifically requested to do so by the other party, the requesting party may choose both arbitrators who shall choose the third."  On the present record, there can be no dispute that Hagerty properly invoked the arbitration clause and that Encompass failed to appoint an arbitrator within thirty days of being specifically requested to do so.  The issue, therefore, is whether grounds exist for the court to relieve Encompass from the contractual consequences of its failure to abide by the procedure set forth in the arbitration clause.

       Section 5 of the FAA provides, in pertinent part:  "If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed."  9 U.S.C. § 5.  Hagerty argues that section 5 of the FAA requires the court to enforce the procedural provisions of the arbitration clause as written.  In support of this proposition,

it relies principally on *Kentucky River Mills v. Jackson*, 206 F.2d 111 (6th Cir. 1953).  In *Kentucky River Mills*, one of the parties to a contract demanded arbitration and named its arbitrator, but the opposing party took the position that the dispute was not arbitrable and refused to name its arbitrator during the period allowed by the contract.  The matter was therefore submitted to arbitration on an *ex parte* basis, before the arbitrator appointed by the demanding party.  Kentucky River Mills filed suit in federal district court to set aside the arbitration award.  On appeal, Judge McAllister noted that the arbitration clause expressly allowed submission of a dispute to a single arbitrator in the event that one party failed to nominate its arbitrator as required by contract.  The court therefore affirmed the arbitration award.

A later decision of the Sixth Circuit, however, modified the bright line approach applied in *Kentucky River Mills*.  In *Texas Eastern Transmission Corporation v. Barnard*, 285 F.2d 536 (6th Cir. 1960), the arbitration clause provided that if a party failed and refused to designate an arbitrator within thirty days after written request, the arbitrator designated by the party requesting arbitration would have the right to proceed independently to decide the dispute.  285 F.2d at 538.  Barnard issued an arbitration demand but did not name his arbitrator.  The thirty-day period during which the responding party, Texas Eastern, was allowed to nominate its arbitrator expired without action.  Barnard then informed Texas Eastern of its intention to proceed with an *ex parte* arbitration as allowed by the contract.  Texas Eastern responded by naming its arbitrator on the same day and by filing a civil action seeking a judgment vindicating its right to name an arbitrator after the expiration of the period set forth in the contract.

Judge McAllister, again writing for the court, determined that it would be inequitable to enforce the forfeiture of Texas Eastern's right to name an arbitrator, in the circumstances of the

-28-

case. Judge McAllister distinguished his previous decision in *Kentucky River Mills*, by pointing out that *Kentucky River Mills* involved the "outright refusal by one of the parties to appoint an arbitrator." 285 F.2d at 538. The court determined that the "controlling consideration" of the case was that the arbitration agreement did not provide that time was of the essence of the contract. "At law and in equity, the question is one of construction to be determined by the intent of the parties and time is, ordinarily, not of the essence, unless it is made so by express stipulation, or unless something in its nature, or connected with its purpose, makes it apparent that the parties intended the contract to be formed within the time specified." *Id.* at 539. As nothing in the agreement indicated that the parties intended time to be of the essence with regard to the choosing of arbitrators, the court determined that it would be equitable to relieve Texas Eastern of the forfeiture. The court noted that when a party applies for an order under section 4 of the FAA, he is seeking equitable relief in the nature of specific performance. In equity, time is not of the essence unless the contract "very plainly" makes it so and, further, equity disfavors forfeitures. 285 F.2d at 539 (quoting *In re Utility Oil Corp.*, 10 F. Supp. 678, 680-81 (S.D.N.Y. 1934)).

In the five decades that have elapsed since the Sixth Circuit addressed the issue in *Kentucky River Mills* and *Texas Eastern*, that court has not had occasion to revisit the question. A split of authority has arisen among other courts regarding this issue. Many courts, relying on *Texas Eastern*, have relieved parties of the consequences of their failure to appoint an arbitrator in a timely fashion, where time was not of the essence and the defaulting party acted reasonably. *See, e.g., Ancon Ins. Co. v. GE Reinsurance Co.*, 480 F. Supp. 2d 1278, 1282 (D. Kan. 2007) (collecting cases); *Lobo & Co. v. Plymouth Navigation Co. of Monrovia*, 187 F. Supp. 859 (S.D.N.Y. 1960). Those courts have granted relief when the defaulting party was deemed to have acted reasonably,

relying on the policy of the FAA to secure a just resolution of the parties' disputes before an impartial arbitration panel, such that both parties have confidence in the outcome. *Ancon*, 480 F. Supp. 2d at 1286. Other courts have expressly parted company with the Sixth Circuit, strictly enforcing the time limits set forth in the arbitration clause. *See, e.g, Universal Reins. Corp. v. Allstate Ins. Co.*, 16 F.3d 125 (7th Cir. 1993).

This court, of course, is bound by the last pronouncement of the Sixth Circuit on the issue, the *Texas Eastern* case. Under *Texas Eastern*, where time is not of the essence of the contract, the court may relieve a defaulting party of the consequences of its failure to name its arbitrator in the time required by the contract, where the defaulting party has acted reasonably. Because the parties did not make time of the essence with regard to selection of arbitrators under the arbitration clause in paragraph VI(T) of the Agency Agreement Addendum, Encompass is entitled to relief if it can demonstrate that it acted reasonably.

Encompass argues that its conduct was reasonable, as a matter of law. Hagerty disagrees, asserting that the reasonableness of Encompass's conduct frames a material issue of disputed fact. The court agrees with Hagerty. In most circumstances, the question of reasonableness is an issue of fact. *See Pivnick v. White, Getgey & Meyer Co., CPA*, No. 07-4304, ___ F.3d ___, 2009 WL 56888 (6th Cir. Jan. 12, 2009); *Niemi v. NAK Spring Co.*, 543 F.3d 294, 306 (6th Cir. 2008). The facts set forth in the complaint and answer do not conclusively establish the reasonableness of Encompass's conduct, an issue upon which Encompass bears the burden of proof. Consequently, while recognizing the applicability of the standard established in *Texas Eastern*, the court determines that unresolved factual questions preclude resolution of the question of

reasonableness on the present record. Encompass's motion for judgment on the pleadings will therefore be denied, on the ground of the existence of a material issue of disputed fact.

### **Conclusion**

The court will grant in part and deny in part defendants' motion to compel arbitration and for summary judgment. (docket # 44). Plaintiff's motion for judgment on the pleadings (docket # 42) will be denied, without prejudice to the assertion of the same issue on motion for summary judgment or at trial.


Dated:   January 22, 2009                    /s/  Joseph G. Scoville
                                             United States Magistrate Judge

-31-